IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Unum Life Insurance Company of America, | C/A No. 4:15-cv-01226-RBH-KDW |
| Plaintiff/Counter-Defendant, | |
| vs. | REPORT AND RECOMMENDATION |
| Donna Brookshire;<br>Bryant Weaver, and<br>Jennifer Weaver, | |
| Defendants/Cross-Defendants, | |
| and | |
| S.W., a minor, | |
| Defendant/Counter-Claimant/<br>Cross-Claimant. | |

This case is before the undersigned because all Defendants are proceeding pro se.[1] Pursuant to 28 U.S.C. §636(b)(1), and Local Civil Rule 73.02(B)(2)(e) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in such pro se cases and to submit findings and recommendations to the District Court. The parties did not conduct any discovery and the proceeds of the Policy are now subject to distribution. Because no party filed a dispositive motion in the case after being given notice of the importance and time to do so, ECF Nos. 61, 78, and of the court's intention to consider the merits *sua sponte* if no dispositive motion was filed, ECF No. 97, the undersigned is considering the merits of each party's positions as stated in their initial pleadings on the court's own motion for summary judgment. Fed. R. Civ. P. 56 (f).

---

[1] The Cross-Claimant S.W., who is a minor, is represented by a Guardian ad Litem ("GAL"). ECF Nos. 27, 34.

Therefore, under the liberal construction of pro se pleadings rule, the undersigned hereby construes S.W., a minor's Crossclaims, ECF No. 34, as a motion for summary judgment so as to permit entry of a Report and Recommendation ("Report") on the merits of this interpleader action to the district court. For ease of reference, the parties will be referred to according to their positions relative to the Crossclaims.

I.    Factual Background

The undisputed facts show that Cross-Defendant Donna Brookshire is a resident and citizen of Myrtle Beach, South Carolina and was the girlfriend of the Decedent, Clifford Weaver ("Decedent") at the time of his death. Cross-Defendant Bryant Weaver is a resident and citizen of Conway, South Carolina and is the brother of the Decedent. Cross-Defendant Jennifer Weaver is a resident and citizen of Alderson, West Virginia and is the former spouse of the Decedent. Cross-Claimant S.W. is a surviving minor child of the Decedent and Jennifer Weaver and currently resides in West Virginia with Jennifer Weaver. S.W. is disabled with cerebral palsy and receives medical benefits through Medicaid. ECF Nos. 34, 55.

Decedent's former employer, Conbraco Industries, Inc. ("Conbraco") established and/or maintained basic group life and supplemental group life insurance coverage with Unum Life Insurance Company of America ("Unum") for the benefit of its employees as part of an employee-welfare benefit plan ("Plan") governed by 29 U.S.C. § 1001 et seq. ("ERISA"). This Plan was funded, at least in part, through Unum's group life insurance policy number 417111 (the "Policy"). Decedent was a participant in the Plan. Decedent was a covered insured under a basic group policy in the amount of Twenty Thousand and no/100 Dollars ($20,000.00) and under a supplemental group policy in the amount of One Hundred Fifty Thousand and no/100 Dollars ($150,000.00) issued to Conbraco. Prior to Decedent's death and almost five months

2

after the June 16, 2014 entry of the final judgment in his South Carolina divorce action (see below), on November 15, 2014, Decedent designated Cross-Defendant Brookshire (50%), Cross-Defendant Bryant Weaver (25%) and Cross-Claimant S.W. (25%) as primary beneficiaries of the Policy. ECF No. 1-2. Decedent made no further changes to his beneficiary designation before he died on or about January 7, 2015.

At an undisclosed time, Cross-Defendant Jennifer Weaver provided Conbraco with a copy of her divorce decree from an action entitled *Jennifer Sue Weaver v. Clifford Henry Weaver, Jr.*, No. 2013-DR-26-1577 in the Family Court of Horry County. The court decree specifically incorporates a settlement agreement entered by the parties, which agreement contains a provision that states "HUSBAND shall continue to maintain the life insurance policy through his employer in the amount of One Hundred Fifty Thousand and no/100 Dollars ($150,000.00) and name WIFE as the sole beneficiary to the policy. HUSBAND shall continue the policy and timely pay the premiums and costs associated therewith. HUSBAND shall provide proof of the coverage annually, by December 31 of every year, to WIFE."[2] ECF No. 1-3 at 3. This is the only reference to insurance coverage in the divorce decree.

II.     Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If a movant asserts that a fact cannot be disputed, it must support that

---

[2] There is no indication in the materials provided to the court that Decedent provided any such proof before his death.

3

assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319, 323 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

III.     Discussion

    A.     The Parties' Contentions

Citing only to non-ERISA-based state law,[3] Cross-Claimant S.W., a minor, through her GAL, contends that the full $150,000.00 portion of the Policy should be distributed to Cross-

---

[3] The court notes that, despite having been specifically ordered to brief the issue of whether the divorce decree at issue in this case is a Qualified Domestic Relations Order ("QDRO"), ECF No. 97, the GAL's only response to that Order was a one-page list of four non-ERISA-related South Carolina state-court cases: *Taylor v. Taylor*, 353 S.E.2d 156 (S.C. Ct. App. 1987) (apparently non-ERISA-governed group policy and private policies involved; constructive

Defendant Jennifer Weaver based on an argument that the Horry County divorce decree should prevail over the Decedent's subsequent contrary beneficiary designation. ECF No. 34 at 2. SW notes that, given her disability, there are Medicaid reimbursement issues that might arise should she be awarded any portion of proceeds. S.W. contends that the remaining proceeds from the policy should be awarded in accordance with Decedent's beneficiary designation. *Id*. Cross-Defendant Bryant Weaver responds that he does not know all the facts, but that he has suffered emotional and financial hardships since his brother's death, "there are discrepancies" in the Horry County divorce decree, and he believes that Decedent's wishes should be carried out. He, like Cross-Defendant Brookshire, asks that the Policy proceeds be divided among the three beneficiaries and in the percentages listed by Decedent in the beneficiary-designation document. ECF No. 53. Cross-Defendant Jennifer Weaver contends that the $150,000.00 portion of the proceeds should be awarded to her as provided under the divorce decree. She states that she and S.W. have suffered financial hardship since Decedent's death and that she had previously expended "thousands of dollars toward attorneys fees" in connection with the Horry County divorce proceedings "to protect" her and her daughter. ECF No. 55 at 1. She states that "it is in S.W.'s best interest" to enforce the Horry County divorce decree and award the $150,000.00 Policy proceeds to her because that would protect the proceeds from seizure by Medicaid to

---

trust established for intended beneficiary under divorce decree; no references to ERISA in opinion); *Estate of Revis v. Revis*, 484 S.E.2d 112 (S.C. Ct. App. 1997) (employer-provided and private coverage involved; general contract law discussed; no reference to ERISA); *Jefferson Pilot Life Ins. Co. v. Gum*, 393 S.E.2d 180 (S.C. 1990) (same); *Glover v. Inv. Life Co. of Am.*, 439 S.E.2d 297 (S.C. Ct. App. 1993) (private insurance involved, general contract law applied with no reference to ERISA). The GAL provided no analysis of or argument based on any of those cases, and she did not even mention her failure to address the QDRO issue. ECF No. 100. This was an inadequate response to the Order in question. The court also had to direct the GAL to respond to the Complaint, ECF No. 31, and to file a dispositive motion, ECF No. 78, but no dispositive motion was filed on behalf of S.W. In short, the GAL has not exhibited any form of proactive representation in this case and her involvement can be described as minimal at best.

reimburse the amounts it has paid toward S.W.'s care to date. *Id*. Cross-Defendant Donna Brookshire responds that Cross-Claimant S.W. and Cross-Defendant Jennifer Weaver, as the custodial parent of the disabled child, are benefitting financially from Social Security survivor benefits, that the child custody/visitation provisions of the Horry County divorce decree had been breached by Cross-Defendant Jennifer Weaver, and that the wishes of Decedent should prevail over the vaguely and broadly worded insurance provision of the settlement agreement. Therefore, she requests that all proceeds from the Policy be divided among the three beneficiaries and in the percentages listed by Decedent in the beneficiary-designation document. ECF No. 56.[4]

B.     Applicable Law

As noted in the Orders previously issued in this case, the Policy at issue in this case is the type of life insurance policy governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). "Interpleader actions such as this one filed by ERISA plan stakeholders are quite common . . . [i]ndeed, it has been held that failure to interplead can constitute breach of ERISA's fiduciary duty of prudent plan administration." John H. Langbein, *Destructive Federal Preemption Of State Wealth Transfer Law In Beneficiary Designation Cases: Hillman Doubles Down On Egelhoff*, 67 VNLR 1665, 1676 n.56 (November 2014) (citing ERISA § 404(a)(1)(B), 29 U.S.C. 1104(a)(1)(B) and *Atwater v. Nortel Networks,* 388 F. Supp. 2d 610 (M.D.N.C. 2005)). Generally, ERISA "preempts all state laws that 'relate to' an ERISA plan." *Darcangelo v. Verizon Commc'ns*, 292 F.2d 181, 194 (4th Cir. 2002); *see also* 1 Ronald J. Cooke, *ERISA*

---

[4] Although both Cross-Defendant Brookshire and Cross-Defendant Bryant Weaver only refer to the $150,000.00 portion of the Policy in their arguments, under the rule of liberal construction of pro se pleadings, the undersigned is construing their pleadings as applicable to all $170,000.00 in proceeds under the Policy. ECF No. 91 (District Court's Order placing the full $170,000.00 into the court's registry).

*Practice and Procedure* § 2:23 (2d ed. 2015). However, an exception to the preemption rule is state law respecting domestic relations where a QDRO is entered by a state court. *Metro. Life Ins. Co. v. Pettit*, 164 F.3d 857, 863 (4th Cir. 1998); *Metro. Life Ins. Co. v. Leich-Brannan*, 812 F. Supp. 2d 729, 735 (E.D. Va. 2011). A QDRO is a judgment or order made pursuant to state domestic relations law that establishes the right of an alternate payee to receive benefits payable under an ERISA plan. *See* 29 U.S.C. § 1056(d)(3)(B)(i). *Leich-Brannan,* 812 F. Supp. 2d at 736.

A QDRO is effectively an exception to the plan documents rule, under which a plan trustee can directly pay the plan benefits described in the QDRO to the person in whose favor the QDRO is entered. *Id*. The plan documents rule has been recognized in this Circuit. The Fourth Circuit Court of Appeals has determined that the Supreme Court's decision in *Kennedy v. Plan Administrator for DuPont Savings & Investment Plan,* 555 U.S. 285 (2009), represents a "broad endorsement" of the plan documents rule. *Boyd v. Metro. Life Ins. Co.,* 636 F.3d 138, 140 (4th Cir. 2011). Under the plan documents rule, "plan administrators look solely at 'the directives of the plan documents' in determining how to disburse benefits." *Id.* (quoting *Kennedy,* 555 U.S. at 300). The plan documents are official forms provided by the administrator such as the form used to designate beneficiaries. The plan documents rule requires a plan administrator to act solely in accordance with the plan documents, so long as the documents are consistent with other provisions of ERISA. The rule gives "a plan participant a clear set of instructions for making his own instructions clear," and "forecloses any justification for enquiries into nice expressions of intent." *Kennedy,* 555 U.S. at 301. The plan documents rule allows for "'simple administration, avoid[ing] double liability, and ensur[ing] that beneficiaries get what's coming quickly, without the folderol essential under less-certain rules.'" *Id.* (quoting *Fox Valley & Vicinity Const. Workers Pension Fund v. Brown*, 897 275, 283 (7th Cir. 1990)). Adherence to the plan

documents rule avoids the "cost of less certain rules," which would require plan administrators "to examine a multitude of external documents that might purport to affect the dispensation of benefits." *Id.* at 876 (citation and internal quotation marks omitted).

To qualify as a QDRO, a judgment and property settlement agreement must meet the statutory requirements of ERISA. First, the order must "relate[ ] to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant." 29 U.S.C. § 1056(d)(3)(B)(ii). The order must also meet certain statutory specifications set forth by 29 U.S.C. § 1056(d)(3)(C). Specifically, to be a QDRO, the order must specify:

> (i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,
>
> (ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,
>
> (iii) the number of payments or period to which such order applies, and
>
> (iv) each plan to which such order applies.

*Id.* § 1056(d)(3)(C). There must be compliance with the statutory specifications. *See Wade v. Hampton Roads Shipping Ass'n*, No. 2:07cv347, 2007 WL 3376652, at *4 (E.D. Va. Nov. 7, 2007) (citations omitted). In this regard, the *Wade* court stated: "Courts have strictly applied [the statutory QDRO requirements] and have held that a domestic relations order that does not include all of this information cannot be considered a QDRO." *Id*. In *Wade*, a separation agreement was found not to be a QDRO because it "fail[ed] to specify the particular retirement plan it is referencing and fail[ed] to specify the number of payments or applicable period of time to which it applies as required by statute." *Id*.; *see also Deaton v. Cross*, 184 F. Supp. 2d 441, 443 (D. Md. 2002) (finding that the separation agreement was not a QDRO because "it did not

8

specify the percentage or method of distribution of life insurance proceeds" and "did not provide the mailing addresses of the decedent or that of the children"). In *Board of Trustees of Plumbers & Pipefitters Nat'l Pension Fund v. Saxon*, 470 F. Supp. 2d 605, 609 (E.D. Va. 2007), the court noted that the separation agreement did not meet the QDRO requirements because it "fail[ed] to identify the relevant pension funds, and [did] not specifically require the Pension Fund to do anything or pay any benefits." The *Saxon* court granted summary judgment upholding the plan's award of benefits to the person designated on the decedent's beneficiary designation, instead of to the ex-wife, who was named in the property settlement agreement.

C.      Discussion

In light of *Boyd* and *Kennedy,* the undersigned finds that the plan documents rule applies to this interpleader action. There is no dispute that the most current beneficiary designation received by Unum in November 2014, ECF No. 1-2, shows Cross-Defendants Brookshire, Bryant Weaver, and Cross-Claimant S.W., a minor, as the beneficiaries. Thus, unless there is a valid exception to the plan documents rule, Unum should have paid the benefits in accordance with the relevant plan document -- the November 2014 beneficiary designation. Because of the dispute among the parties, however, and to protect itself from potential multiple liability, Unum properly instituted this interpleader action. *See Atwater v. Nortel Networks,* 388 F. Supp. 2d at 616.

Initially, the undersigned finds that Cross-Claimant SW's citation to general South Carolina state law relative to non-ERISA-controlled factual scenarios, *see supra* note 2, does not support the result she requests in this case. The cases are irrelevant in this case because the state contract law on which they are based is preempted by ERISA unless a QDRO is involved in a dispute among potential beneficiaries and none of those cases address the QDRO issue. Although

9

it is clear that Decedent violated the agreement within months of signing it, the property-settlement agreement incorporated into the Horry County divorce decree at issue in this case is not the type of domestic relations order that operates as an exception to the plan documents rule. The Horry County divorce decree does not satisfy the statutory criteria to be considered a QDRO because the incorporated settlement agreement is not specific and detailed enough with respect to the identification of the Policy or of the time period during which the agreement was intended to operate. The agreement only refers to a $150,000.00 policy with the former husband's "employer," but it does not state when, how, or if the agreement regarding the insurance coverage would terminate or how many payments would be made under the agreement. Neither the divorce decree nor the settlement agreement provides the name of the "employer" or the employer's address or any other type of direct identification of the Policy at issue in this case. Furthermore, neither the divorce decree nor the settlement agreement contains the statutorily required mailing address of Cross-Defendant Jennifer Weaver, who, under the divorce settlement agreement, was to become the payee of the $150,000.00 portion of the Policy.

Under these circumstances and in light of the plan document rule and other applicable law, the undersigned finds irrelevant and unconvincing the state law cited by the GAL to support her position that the Horry County divorce decree incorporating the settlement agreement should prevail over the Decedent's subsequent plan beneficiary designation. Under the plan document rule, in absence of a valid QDRO, the beneficiary designation controls and the state court decree is ineffective and the proceeds should be divided among Cross-Defendants Brookshire, Bryant Weaver, and Cross-Claimant S.W. in accordance with Decedent's November 14, 2014 beneficiary designation. Because Cross-Claimant S.W. is a minor and a disabled person, S.W.'s mother, Cross-Defendant Jennifer Weaver, in consultation with the GAL, should consider

placing her share of the proceeds in a special needs trust so that it may be protected from a reimbursement seizure by Medicaid during S.W.'s lifetime. *See* 42 U.S.C. § 1396p(d)(4)(A) (defining a special needs trust as "A trust containing the assets of an individual under age 65 who is disabled . . . and which is established for the benefit of such individual by a parent, grandparent, legal guardian of the individual, or a court if the State will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan under this subchapter."); *Harris v. Astrue*, No. 5:11CV041, 2012 WL 4470472, at *2 (W.D. Va. Sept. 27, 2012) (discussing the effect of certain income placed in a special needs trust on eligibility for Social Security benefits). The court has authority to order the establishment of a special needs trust under the circumstances involved in this case. *See* Lawrence Frolik & Melissa Brown, *Advising the Elderly or Disabled Client*,   ¶ 17.03 Special Needs Trusts & Personal Injury Settlements (2d ed. 2016) ("Many special needs trusts . . . are established pursuant to a court order for disabled adults who lack sufficient mental capacity to create a trust."); *see also Arnold v. National Cas. Co.*, No. 11-0009, 2015 WL 3971224, at **14-15 (W.D. La. June 9, 2015) (discussing the validity of a court-ordered special needs trust); *Guerrrero v. Brentwood Union Sch. Dist.*, No. C13-03873LB, 2014 WL 1351208, at *3 (N. D. Cal. April 4, 2014) (establishing a special needs trust for settlement proceeds); *In re Estates of Esterbrook*, 80 P.3d 419, 421-22 (Mont. 2003) (discussing the requirements and purpose of a special needs trust and remanding for lower court to reconsider ordering one established); *In re Kennedy*, 779 N.Y.S.2d 346, 349 (Surr. Ct. 2004) (court may direct establishment of an amended special needs trust "in its 'inherent exercise of power'") (quoting *Matter of Goldblatt*, 618 N.Y.S.2d 959 (Surr. Ct. 1994)).

IV.     Conclusion and Recommendation

Based on the foregoing, it is recommended that the District Court award Cross-Defendant Brookshire 50% of the entire Policy ($85,000.00); Cross-Defendant Weaver 25% of the entire Policy ($42,500.00); and Cross-Claimant S.W. 25% of the entire policy ($42,500.00). It is further recommended that before distribution of the Policy proceeds, the District Court order Cross-Defendant Jennifer Weaver establish a special needs trust naming S.W. as the sole beneficiary and that Cross-Claimant S.W.'s share of the Policy proceeds be used to fund the trust.

April 27, 2016                                              Kaymani D. West
Florence, South Carolina                                    United States Magistrate Judge

**The parties' attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 2317**
> **Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).